IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| City of Myrtle Beach | ) | Civil Action No.: 4:10-cv-02884-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Buchanan Motels, LLC, Atlantica | ) | |
| Property Owners' Association, Inc., | ) | |
| Captains Quarters Motor Inn, Inc., | ) | **ORDER** |
| Dunes Village Property Owners' | ) | |
| Association, Inc., Meridian Plaza HPR | ) | |
| Council Co-Owner, Monterey Bay Suites | ) | |
| Resort Homeowners' Association, Inc., | ) | |
| The Windsurfer, Inc., and Pan American | ) | |
| Properties, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This lawsuit arises from a dispute between Plaintiff, the City of Myrtle Beach ("Myrtle Beach," "Plaintiff Myrtle Beach," or "Plaintiff"), and Defendants,[1] various Myrtle Beach businesses ("Defendants"), regarding the alleged violation of local ordinances passed pursuant to guidance from the Federal Emergency Management Agency ("FEMA"). Currently pending before the Court are Plaintiff Myrtle Beach's Motion for Summary Judgment and Defendants' Motion for Summary Judgment. [Docs. # 43, 53.] For the following reasons, Plaintiff Myrtle Beach's request for a declaratory judgment that Defendants are in violation of FEMA regulations, and Plaintiff Myrtle Beach's request for injunctive relief to prevent Defendants from continuing to violate these regulations, are dismissed for lack of standing. This Court declines to exercise

---

[1] According to Plaintiff Myrtle Beach, of the above-captioned Defendants, only Dunes Village Property Owners Association, Inc., Meridian Plaza Horizontal Property Regimes, Monterey Bay Suites Resort Homeowners' Association, Inc., and The Windsurfer, Inc. still have properties that Myrtle Beach deems non-compliant.

jurisdiction over any of the remaining state law claims, and this case is dismissed without prejudice.[2]

**Background and Procedural History**

I.     Overview of the National Flood Insurance Program

The National Flood Insurance Program ("NFIP") was created by the National Flood Insurance Act of 1968, Pub. L. No. 90–448, §§ 1301–1377, 82 Stat. 476, 572–589 (codified as amended at 42 U.S.C. §§ 4001–4129 (West 2012)). The purpose of NFIP is to provide subsidized flood insurance protection to property owners in flood-prone areas under a national policy promulgated by FEMA. *See, e.g.*, 42 U.S.C. § 4001. FEMA is also responsible for managing NFIP, which includes issuing rules and regulations under the program. 42 U.S.C. § 4011. Federal law prohibits FEMA, as the administrator of NFIP, from providing flood insurance unless "an appropriate public body shall have adopted adequate land use and control measures" consistent with the National Flood Insurance Act. 42 U.S.C. § 4022(a)(1). Accordingly, FEMA's regulations regarding eligibility for NFIP do not directly govern individual properties or specific property owners. Instead, property owners are eligible for subsidized insurance under NFIP *only* through the voluntary participation of their "community." *Id.*; *see also* 42 U.S.C.A. § 4003(a)(1) (defining "community" under NFIP as "a State or a political subdivision thereof which has zoning and building code jurisdiction over a particular area having special flood hazards").

FEMA has developed a flood insurance rate map that delineates various risk premium zones in a community. 44 C.F.R. § 59.1. FEMA's NFIP regulations set forth the minimum standards that communities must maintain, by way of local regulations, within each zone in order to become or remain eligible for subsidized insurance under the voluntary program. *See* 44 C.F.R.

_____

[2]  Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing."  The issues have been fully briefed by the parties, and the Court believes a hearing is not necessary.

§ 60.2(a) ("A flood-prone community applying for flood insurance eligibility shall meet the standards of § 60.3(a)."); 44 C.F.R. § 60.3–.5 (outlining adequate flood plain management standards for participating communities). Specifically. FEMA requires that a community ensure that, in certain risk zones, the "space below the lowest floor [is] either free of obstruction or constructed with non-supporting breakaway walls . . . ." 44 C.F.R. § 60.3(e)(5). Technical bulletins from FEMA indicate that communities should ensure that swimming pools located "beneath a coastal building" in Risk Zone V must remain unenclosed. FEMA, *Free-of-Obstruction Requirements for Buildings Located in Coastal High Hazard Areas*, Technical Bulletin 5-93, at 6 (April 1993); *see also* FEMA, Technical Bulletin 5-08, at 26 (August 2008) (replacing 5-93, but containing the same title and expressing an identical prohibition against enclosed swimming pools beneath buildings in Zone V).[3]

If a community fails to adequately enforce regulations which might otherwise comply with NFIP, the community is subject to receiving a notice from FEMA that their actions do not comply with NFIP. 44 C.F.R. § 59.24(b). This notice is followed by the imposition of a probationary period during which the community has an "opportunity to avoid probation by demonstrating compliance with [FEMA's NFIP] requirements, or by correcting . . . deficiencies and remedying all violations to the maximum extent possible." *Id*. If a community fails to remedy its noncompliance during the probationary period, the community "shall be subject to suspension of its [NFIP] eligibility." 44 C.F.R. § 59.24(c).

However, FEMA does not penalize a community simply because certain property owners do not comply with, or dispute the applicability of, local regulations deemed NFIP-compliant by

---

[3] FEMA Technical Bulletin 5-08 is available at:
http://www.fema.gov/library/viewRecord.do?id=1718.
FEMA Technical Bulletin 5-93, which is no longer current, is available at:
http://vopv.org/FEMA/TB%205-93%20Free-of-Obstruction%20Requirements.pdf.

FEMA. Instead, FEMA offers communities a process to exclude noncompliant properties from subsidized insurance, while the community and compliant properties remain eligible for NFIP. *See* 44 C.F.R. § 73.3. First, the community must issue notice to the property owners that their properties are in violation of local, NFIP-compliant regulations, and that the property owners risk losing NFIP eligibility and its attendant subsidized insurance. 44 C.F.R. § 73.3(d)(4). Second, the community files a formal declaration with FEMA that the properties are in violation of local, NFIP-compliant regulations. 44 C.F.R. § 73.3(a), (c). Third, if FEMA finds the community's declaration to be valid, it will deny subsidized flood insurance under NFIP to the subject properties. 44 C.F.R. § 73.3(b). The properties remain excluded from NFIP until the community rescinds its declaration of violation. 44 C.F.R. § 73.4(a).

II.      Statement of undisputed facts

Myrtle Beach's participation in NFIP began in the 1970s, and since that time property owners in Myrtle Beach have been eligible to obtain subsidized flood insurance. Defendants own buildings within Zone V of Myrtle Beach's flood insurance rate map.

Defendants all have enclosed, ground-level swimming pools located beneath their respective buildings. These pools are enclosed with removable barriers, made mostly of glass, that Defendants claim are constructed to breakaway wall standards. Defendants contend, and Plaintiff Myrtle beach does not appear to dispute, that Defendants' swimming pools were not in violation of any local zoning ordinance when they were constructed.

In March 2007, during an advisory visit to Myrtle Beach, FEMA discovered that Defendants and others had enclosed, below-building swimming pools. On October 24, 2007, FEMA notified Myrtle Beach that swimming pools beneath Zone V buildings could be NFIP

4

compliant only if, among other requirements, the swimming pools were unenclosed year-round.[4] On April 24, 2008, a FEMA administrator wrote Myrtle Beach, affirming FEMA's position that enclosed swimming pools beneath Zone V buildings did not comply with NFIP. [*See* Defs.' Response, Doc. # 44-1.] The administrator explained that for Myrtle Beach to meet NFIP's minimum standards, it had to remove the enclosures from the swimming pools at issue and revise Myrtle Beach's ordinances to prohibit both temporary and permanent enclosures of swimming pools beneath buildings in Zone V.[5] [*Id.*] On April 13, 2010, Myrtle Beach amended its zoning ordinances to ban the permanent or temporary enclosure of any swimming pool located beneath a building in Zone V, and to require removal of existing, noncompliant swimming pool enclosures. *See* Myrtle Beach, S.C., Code of Ordinances 2010-30 (April 13, 2010) (codified at Appendix A - Zoning), *available at* [Doc. # 45-1.]

Both before and after Myrtle Beach enacted its zoning ordinance, it notified affected property owners and requested that those property owners remove enclosures from around their swimming pools. Although several property owners complied, the remaining Defendants have failed to remove the enclosures from their swimming pools. Myrtle Beach has yet to file a formal declaration with FEMA that the properties are in violation of local, NFIP-compliant regulations.

---

[4] This correspondence is not included in the record. However, both Plaintiff Myrtle Beach and Defendants reference this communication, both citing the same date and using the same language. [*See* Pl.'s Mot. Summ. J., Doc. # 43-1, at 4–5; Defs.' Resp., Doc. # 44, at 4.]

[5] FEMA initially gave Myrtle Beach 90 days to complete these tasks, but ultimately gave Myrtle Beach until November 1, 2010.

III.    Procedural history

Plaintiff Myrtle Beach filed a declaratory judgment action on November 5, 2010, seeking the following relief from this Court:[6]

1.    Declaratory judgment that Defendants, various Myrtle Beach businesses, are in violation of FEMA's NFIP regulations by having enclosed, ground-level pools.

2.    Declaratory judgment that Defendants are in violation of local zoning ordinances by having enclosed, ground-level pools.

3.    Injunctive relief to prevent Defendants from continuing to violate NFIP regulations and local zoning ordinances by requiring them to remove any enclosures from around their swimming pools.

[Pl.'s Compl., Doc. # 1, at 10–11.] On August 29, 2011, Plaintiff Myrtle Beach filed a Motion for Summary Judgment. [Pl.'s Mot. Summ. J., Doc. # 43.] Defendants timely responded, to which Plaintiff replied. [Defs.' Resp., Doc. # 44; Pl.'s Reply, Doc. # 45.] Upon review of the record, this Court found that dismissal might be appropriate on grounds not directly raised by the parties: specifically, whether a justiciable controversy was properly before the Court as to Plaintiff Myrtle Beach's request for a declaratory judgment under NFIP, and whether this Court should exercise jurisdiction over the remaining state law claims. Accordingly, on November 23, 2011, this Court entered an order pursuant to Federal Rule of Civil Procedure 56(f) giving each party ten days to address the appropriateness of dismissal. [Doc. # 50.]

Plaintiff Myrtle Beach responded on December 2, 2011. [Pl.'s Resp. to Court Order, Doc. # 57.] Defendants responded with their own Motion for Summary Judgment. [Defs.' Mot. Summ.

---

[6] In its Complaint, Plaintiff Myrtle Beach couched its declaratory judgment requests as a first cause of action, and its injunctive relief requests as a second cause of action. [*See* Pl.'s Compl., Doc. # 1, at 9–10.] For purposes of clarity, this order discusses Plaintiff Myrtle Beach's grounds for relief in the sequence they were raised.

J., Doc. # 53.] Plaintiff Myrtle Beach timely responded to Defendants' Motion, and Defendants filed a reply on December 19, 2011. [Pl.'s Response, Doc. # 57; Defs.' Reply, Doc. # 58.]

## Legal Standard

Because the Court's jurisdiction hinges upon whether Plaintiff Myrtle Beach has standing, this should be a threshold inquiry by the Court. *See Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir.2009).

Article III of the Constitution constrains federal courts to resolve only actual cases and controversies. U.S. Const., art. III, § 2, cl. 1. Because of this constitutional limitation, a plaintiff must demonstrate they have standing to adjudicate their claim in federal courts. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Specifically, in declaratory judgment actions, the Fourth Circuit has explained that a federal court may exercise its jurisdiction in these proceedings only when "the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted).

The burden to establish standing rests with the party invoking federal court jurisdiction, *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 231 (4th Cir. 2008). The plaintiff's burden to demonstrate standing is congruent with the plaintiff's burden of proof at different stages in the litigation. *Stephens v. County of Albemarle, 524 F.3d 485, 491* (4th Cir. 2008). At the summary judgment stage, therefore, the plaintiff cannot predicate standing on general factual allegations; rather, the plaintiff must furnish, "by affidavit or other evidence, specific facts, which for purposes of the summary judgment motion will be taken to be true."

7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citations omitted).

## Discussion

Plaintiff Myrtle Beach lacks standing to request a declaratory judgment that Defendants are in violation of FEMA's NFIP regulations, and to request any injunctive relief to prevent Defendants from violating these NFIP regulations. To the extent this Court has supplemental jurisdiction over the remaining state law claims, the Court declines to exercise its jurisdiction.

I.    Plaintiff Myrtle Beach lacks standing to allege that Defendants violated NFIP

Plaintiff Myrtle Beach requests that this Court declare that Defendants are in violation of NFIP by having enclosed, ground-level pools, and requests a permanent injunction to remedy this violation. [*See* Pl.'s Compl., Doc. # 1, at ¶¶ 43–48; Pl.'s Mot. Summ. J., Doc. # 43-1, at 2.] However, a careful review of the record shows that Plaintiff Myrtle Beach's declaratory judgment action under NFIP does not present a case or controversy.[7]

An actual controversy under Article III of the Constitution encompasses three components: "(1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct, and (3) a favorable decision must be likely to redress the injury." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Lujan*, 504 U.S. at 560-61 (1992)). Plaintiff Myrtle Beach fails on at least two of these three grounds.[8]

_____

[7]  Plaintiff Myrtle Beach initially argued that because this case involved the interpretation of NFIP, this Court was required to exercise jurisdiction. [Pl.'s Mot. Summ. J., Doc. # 43, at 5–7.] However, Plaintiff appears to have abandoned this argument. Since this Court's November 23, 2011, order questioning the justiciability of the case, Plaintiff Myrtle Beach has conceded that "the Court may choose to abstain from deciding the matter." [Pl.'s Resp. to Court Order, Doc. # 57, at 6.]

[8]  Nothing in the record indicates that FEMA has threatened to place Myrtle Beach in probationary status under NFIP, much less threatened to revoke the city's NFIP eligibility. However, because

A.    The alleged injury is not fairly traceable to Defendants

Plaintiff Myrtle Beach's has no threatened injury that is fairly traceable to Defendants' conduct. Plaintiff Myrtle Beach itself has stated that "[i]n the present case the threatened injury comes from FEMA" potentially excluding Myrtle Beach from NFIP. [*See* Pl.'s Response, Doc. # 57, at 2.] However, FEMA is not a party to this case. Neither Plaintiff Myrtle Beach nor Defendants have attempted to challenge the agency's interpretation of FEMA's own flood plain management regulations in a direct action involving FEMA.

Plaintiff Myrtle Beach attempts to argue that because Defendants are not complying with FEMA guidance, there is a threatened injury, traceable to Defendants' noncompliance, that FEMA will potentially exclude Myrtle Beach from NFIP . [*Id.*] This argument reads the requirements of a fairly traceable injury too broadly. As the Fourth Circuit has explained, "where a third party . . . makes the independent decision that causes an injury, that injury is not fairly traceable to the [defendant]." *Doe v. Obama*, 631 F.3d 157, 162 4th Cir. 2011). *See also Pritikin v. Dep't of Energy*, 254 F.3d 791, 797 (9th Cir. 2001) (holding that private citizen suing to compel funding of medical monitoring program failed to meet Article III standing because another agency, not before the court, decides whether to implement the program). Here, to the extent any injury will be suffered by Plaintiff Myrtle Beach, it would come via the actions of FEMA, a third party not before the Court.[9]

_____

Plaintiff Myrtle Beach fails the second and third prong of this Court's standing inquiry, this Court will assume, without deciding, that Myrtle Beach faces some threatened injury from FEMA.

[9]  Plaintiff Myrtle Beach's argument that it is FEMA's designated agent is similarly unavailing. One, there is nothing in the FEMA regulations at issue that indicates a community stands in FEMA's place in this type of proceeding. Two, Plaintiff Myrtle Beach has argued that the threatened harm comes ultimately from FEMA's potential adverse action. It is difficult to see how Plaintiff Myrtle Beach could stand in as FEMA's agent to bring a suit where the threatened injury comes from the very body they claim to represent. Three, the sole case cited by Plaintiff in support of this proposition, dealt with FEMA regulations governing Write-Your-Own ("WYO")

B.     A decision by the Court will not redress any supposed injury

Any favorable decision by this Court will not redress the supposed injury suffered by Plaintiff Myrtle Beach.[10] First, FEMA, by its own regulations, gives *a community* the option of declaring a business to be noncompliant, which allows *the community* to address non-compliant business and ensure the community's eligibility in NFIP. *See* 44 C.F.R. § 73.3.  On their face, then, the regulations are voluntary and speak only to requirements that "communities" must maintain in order to become or remain eligible for subsidized insurance under the NFIP. *See* 44 C.F.R. § 60.1 (explaining that *communities* are responsible for enacting regulations); 44 C.F.R. § 60.2(a) ("A flood-prone *community* applying for flood insurance eligibility shall meet the standards of § 60.3(a)."); 44 C.F.R. § 60.3(a) (outlining requirements *communities* shall perform); *see also* 42 U.S.C.A. § 4003(a)(1) (defining community for purposes of the National Flood Insurance Act as a "a State or a political subdivision thereof which has zoning and building code jurisdiction over a particular area having special flood hazards").

Plaintiff Myrtle Beach argues that any violation alleged under the National Flood Insurance Act by Defendants has been committed by their failure to comply with the regulatory scheme

---

insurance policies. *See Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 680–81 (7th Cir. 2001). Further, the *Downey* court only allowed the case to proceed because it dealt with the extensive federal question of interpreting contracts issued under NFIP; it specifically rejected the notion that jurisdiction could be conferred solely because the insurance company defendant was a "place-holder" for FEMA. *Id.* at 680.

[10]  Even if an actual controversy were present as to Plaintiff Myrtle Beach's request for declaratory judgment pursuant to NFIP, and FEMA's absence as a party were irrelevant, this Court would decline to declare the rights of the parties. Any declaration by this Court would not fully resolve any controversy – Myrtle Beach would still need to declare Defendants in violation, and FEMA would still need to decide if that declaration were valid. This Court would therefore be deciding only a small piece of a larger issue. *See Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992) ("[I]t makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to try a controversy by piecemeal, or to try particular issues without settling the entire controversy." (internal quotation marks and citation omitted)).

10

noted above. These voluntary regulations, though, lay out standards that a community should enforce so that *the community*, as a whole, remains eligible for insurance under NFIP. Defendants, as individual businesses who own property in Myrtle Beach, cannot violate FEMA regulations to which only a "community," and in this case, Myrtle Beach, has voluntarily subjected itself.

Second, FEMA's process for denying coverage to individual businesses begins with the "community" declaring that the property owner has violated a *local*, NFIP-compliant regulation, not by the community declaring that a property owner has violated a NFIP regulation directly. 44 C.F.R. § 73.3(a), (c). It is undisputed that Myrtle Beach has yet to file a formal declaration with FEMA of violation against Defendants. Plaintiff Myrtle Beach also acknowledges that the applicable law does not require a community to obtain a federal court ruling "before filing a declaration of violation[] with the Administrator of FEMA." [Pl.'s Resp. to Court Order, Doc. # 57, at 6.] Accordingly, any ruling by the Court on this issue would be nothing more than an impermissible advisory opinion, as "such an order would not be determinative of any controversy to which [Plaintiff Myrtle Beach] is a party and would be valueless to [Plaintiff Myrtle Beach]." *Lebowich v. O'Connor*, 309 F.2d 111, 114 (2nd Cir. 1962); *see also Michael v. Cockerell*, 161 F.2d 163, 164 (1947) (holding that federal courts may not issue advisory opinions); *see also MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007) (holding that declaratory judgment actions must allege disputes that are "real and substantial and [request] relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be").

Therefore, this Court lacks jurisdiction over Plaintiff Myrtle Beach's request for declaratory judgment under FEMA's NFIP regulations because, as explained above, there is no actual controversy between the parties. It logically follows that this Court also lacks jurisdiction to

11

decide whether Defendants should be forced via an injunction to comply with NFIP by removing their swimming pool enclosures.[11]

II.    This Court declines to exercise jurisdiction over the remaining state law grounds

Plaintiff Myrtle Beach also requests that this Court declare that Defendants are in violation of Myrtle Beach Ordinance 2010-30, and that this Court force Defendants to comply with the local ordinance.

Myrtle Beach's ordinance enacts a ban on swimming pool enclosures that is virtually identical to the prohibition articulated by FEMA in its letters to Myrtle beach on October 24, 2007, and April 24, 2008. Plaintiff Myrtle Beach therefore argues that a substantial federal question exists here because the local ordinances adopt the language of the federal regulations. However, what Defendants truly stand accused of is simply violating a local ordinance, which, as Plaintiff Myrtle Beach explains, "is clear on its face." [Pl.'s Reply, Doc. # 45, at 1.] That FEMA's interpretation of the NFIP regulations may have driven Myrtle Beach to enact its local ordinances, which have a presumption of validity, does not give rise to a substantial federal question. "The challenged legislation in the case at bar is clearly not among the limited and well defined exceptions to the principle discouraging judicial inquiry into legislative motive." *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 (4th Cir. 1989) (explaining that such exceptions

_____

[11] Given this holding, the Court does not reach the merits of either party's summary judgment motion on these issues. However, if Plaintiff Myrtle Beach had standing to bring these claims, and this Court chose to exercise jurisdiction over the NFIP-related claims, Defendants would be entitled to judgment as a matter of law. The NFIP regulations at issue here are applicable only to communities; businesses, which own property within a covered community, could not violate federal regulations that do not apply to either businesses or property owners. 44 C.F.R. § 73.3. Further, although the NFIP regulations allow FEMA, in certain circumstances, to deny insurance coverage to property owners, these denials are not predicated upon the property owners' violation of NFIP regulations. Instead, this denial is based on a violation "of *State or local* laws, regulations or ordinances which are intended to discourage or otherwise restrict land development or occupancy in flood-prone areas." 44 C.F.R. § 73.3(a) (emphasis added).

include cases relating to race and sex discrimination, establishment of religion, and freedom of speech). That this Court should avoid delving into the motive or intent behind the ordinance is bolstered by the fact that Myrtle Beach, the community that enacted the ordinance, has neither disagreed with nor formally challenged FEMA's interpretation of the regulations in this case.

Plaintiff Myrtle Beach may very well have a justiciable *state law* controversy regarding whether Defendants are violating a local ordinance. But Plaintiff Myrtle Beach's only current basis for federal jurisdiction was that this matter involved NFIP, and as discussed herein, Defendants' actions do not give rise to an actual controversy under this federal program. The remaining issues raised in Plaintiff's Complaint, whether Defendants are in violation of a local ordinance and whether Defendants should be forced, via injunction, into compliance with that local ordinance, are matters that are squarely addressed by the application of state law. To the extent this Court has jurisdiction over these state law claims, it declines to exercise jurisdiction. *See* 28 U.S.C.A. § 1367(c) (empowering a district court to decline supplemental jurisdiction when federal issues have been dismissed).

### Conclusion

Based on the foregoing, it is **ORDERED** that:

1. Plaintiff Myrtle Beach's request for a declaratory judgment that Defendants are in violation of FEMA's NFIP regulations, and Plaintiff Myrtle Beach's request for injunctive relief to prevent Defendants from continuing to violate these NFIP regulations, are **DISMISSED** for lack of standing;

2. This Court **DECLINES** to exercise jurisdiction over the remaining state law claims in this case;

3. Plaintiff Myrtle Beach's Motion for Summary Judgment [Doc. # 43], and Defendants' Motion for Summary Judgment [Doc. # 53], are **DENIED AS MOOT**; and

4. This case is hereby **DISMISSED** without prejudice in its entirety.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
January 17, 2012